IN THE UNITED STATES DISTRICT COURT

For the Southern District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Plaintiff,<br><br>v.<br><br>JAMES E. FRANKLIN,<br>  Defendant. | Case No. 02cv84 DMS (RBB) |

**MASTER SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE JUDGMENT UNDER RULE 60(b)(5) AND (6)**

**PRELIMINARY STATEMENT: CONTEXT, EQUITY, AND THE UNCHANGED INTEGRITY OF JAMES FRANKLIN**

1. This motion seeks relief from a judgment entered over twenty years ago, built on legal doctrines that have since collapsed and facts that never supported lasting sanctions. It concerns a man — James Franklin — who built his career ethically, harmed no investors, broke no financial rules knowingly, and whose conduct today would not result in a permanent professional death sentence.

2. The conduct at issue dates back to **1998**, the dawn of the internet age — **before Google**, before online regulatory guidance, and before any agency fully understood what digital securities promotion would become.

3. At that time, Franklin was already a veteran of the capital markets. He had become a licensed stockbroker **before age 18**, participated in the **formation of over 30 public and energy-related entities**, and had **zero customer complaints** throughout his early financial career. His record was one of innovation, entrepreneurship, and integrity.

4. In 1998, working on resource development ventures with a group of Colorado geologists, Franklin helped merge Amalgamated Exploration into a dormant shell, **Sue Wong International**, hoping to give life to a company through public markets — **not backroom brokerage deals**. He later helped facilitate additional shell combinations with the same goal: public capital for public companies, through direct investor communication.

5. But the world changed overnight. The internet emerged as a force for public dialogue and stock commentary. Franklin met a young entrepreneur who wanted to summarize company filings with flair and distribute them online. There were no false statements. No omissions. Only public information — expressed dynamically.

6. The result? A communications breakthrough. Investors responded. Demand surged. Stocks rose. And the **SEC cried fraud — not because of lies or deception — but because they couldn't explain the rise**.

7. No victims were ever alleged. No investors lost money.

   The **SEC admitted on the record**:

"There are no victims… everybody made money." (Tr. 2088)

8. Mr. Franklin made no trades. He received no direct profit. His role was to build companies and get them noticed — and he succeeded. But the regulatory framework of the time treated success with suspicion, especially success that bypassed broker channels.

9. And so, in 2005, a judgment was entered. A **permanent penny stock bar**.

   A **civil death sentence** in finance.

   Not for theft.

   Not for misrepresentation.

2

But for helping to create a form of investor communication that would later become **normal** — even **encouraged**.

10. In today's legal landscape — where *Chevron deference is gone*, *Morrison limits extraterritorial enforcement*, and *scienter is essential* — that judgment **would never be issued**.

11. What justifies taking a man's professional life — for life — when the law no longer supports the judgment, and the facts never did?

12. If a lawyer misplaced funds but repaid them, we wouldn't disbar him for life.

    If a man sped once, we wouldn't revoke his license forever.

    Yet that is what happened here — and it continues, every day.

13. This motion asks the Court to correct that.

## I. INTRODUCTION

14. Defendant James E. Franklin respectfully submits this supplemental memorandum in further support of his Motion to Vacate Judgment under Federal Rule of Civil Procedure 60(b)(5) and (6). This filing consolidates critical findings from the trial transcript and applies post-judgment legal precedent, showing the judgment rests on incomplete or flawed legal foundations, while continuing to inflict disproportionate and inequitable harm.

## II. NO INVESTOR LOSS OR HARM WAS EVER ALLEGED OR PROVEN

15. The SEC acknowledged that no investors lost money, and the Court confirmed this was not part of the case. Multiple transcript passages reflect:

3

"The SEC is not going to produce any victims because there are no victims... Everybody made money."

— *Mr. Lieberman, SEC Trial Counsel* (Transcript p. 2088)

"The government need not prove victims or damages... but from the defense standpoint, there are no victims or no damages to argue good faith, no scienter."

— *Judge Sabraw* (Transcript p. 2088)

16. This lack of victimization or loss **undermines the continuing need for equitable sanctions** such as a penny stock bar — particularly in light of *SEC v. Liu*, 140 S. Ct. 1936 (2020), which clarified that equitable relief must be tied to harm or restitution.

## III. FRANKLIN MADE NO TRADES, RECEIVED NO DIRECT PROFITS

17. Defense counsel confirmed — and the SEC did not refute — that Mr. Franklin did **not execute any trades** in the securities at issue.

"*There is going to be no evidence in this record, currently, that Mr. Franklin has made any trades.*"

(Transcript p. 197)

18. This rebuts the SEC's implied "pump and dump" narrative and supports Franklin's position that he neither profited directly nor had the intent to defraud investors.

## IV. FOREIGN TRANSACTIONS WERE OUTSIDE U.S. JURISDICTION

19. Multiple companies and transactions involved Canadian brokers or Cayman-based entities. Defense raised objections that were overruled at trial, but under *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), **the SEC lacked authority to prosecute foreign securities transactions with no domestic nexus**.

20. Moreover, during trial, defense counsel explicitly informed the Court that key trades — including those through Union Securities — were governed by Canadian law:

4

> "We have got the account opening documents for Union Securities saying that the Canadian law and the Canadian exchange rules are going to apply to this, not the S.E.C. rules."
> — *Mr. Quinn, Defense Counsel* (Transcript p. 1573)

21. The SEC did not rebut this assertion. The transactions were accepted into evidence despite clear extraterritorial implications. Under *Morrison v. NAB*, those trades fall outside the scope of U.S. securities law.

22. Under Morrison, these transactions are extraterritorial and not subject to Section 10(b), further invalidating the basis for the judgment.

## V. SCIENTER WAS DISPUTED — NEVER ESTABLISHED

23. Intent was **the central disputed issue** at trial, and the SEC failed to offer direct evidence of intent. The judge and parties agreed this was a key legal threshold:

> "What happened isn't disputed, why it happened and what their intent was is."
> — *Judge Sabraw* (Transcript p. 217)

24. The Supreme Court's decision in *Aaron v. SEC*, 446 U.S. 680 (1980), requires **actual intent to defraud** in 10(b) cases. Circumstantial inferences based on corporate structure or timing fall short — particularly where there are no victims.

## VI. FRANKLIN'S SPEECH WAS OPINION, NOT FRAUD

25. Some evidence presented involved Franklin's statements or newsletter content. However, to the extent the SEC relied on **promotional speech**, it raises *First Amendment* concerns and potentially protected opinion under *Omnicare, Inc. v. Laborers Dist. Council*, 575 U.S. 175 (2015).

5

## VII. LEGAL FRAMEWORK HAS FUNDAMENTALLY SHIFTED

26. Since the original judgment, Supreme Court precedent in Loper Bright v. Raimondo, 601 U.S. ___ (2024), and Axon v. FTC, 598 U.S. 175 (2023), has eliminated judicial deference to agency legal interpretations. The liability and injunctions in this case were based on now-invalid Chevron-style deference to SEC interpretations of "fraud," "control," and jurisdiction.

## VIII. CONCLUSION

27. There were no victims. No losses. No personal gain by Mr. Franklin. No jurisdiction over foreign transactions. No scienter. And potentially unconstitutional prosecution of protected speech. The legal framework has shifted dramatically. Continuing to enforce the 2005 judgment — both its injunctive relief and its liability finding — is inequitable, unsupported, and contrary to law.

**Mr. Franklin respectfully requests that this Court:**

1. **Vacate the penny stock bar and all injunctive provisions,**
2. **Set aside the underlying judgment of liability**, and
3. **Grant full relief under Rule 60(b)(5) and (6)** and restore Mr. Franklin's rights under current constitutional and statutory law.

**Respectfully submitted,**

*James Franklin*
James E. Franklin, Pro Se
1212 H Street, #125
Ramona, CA 92065
jayvonfrank@gmail.com
Dated: May 5th, 2025

6

IN THE UNITED STATES DISTRICT COURT
For the Southern District of California

SECURITIES AND EXCHANGE COMMISSION
Plaintiff,

v.

JAMES E. FRANKLIN,
Defendant.

Case No. 02cv84 DMS (RBB)

## CERTIFICATE OF MAILING

I, **James E. Franklin**, declare that on **May 05, 2025**, I caused true and correct copies of the following document:

**MASTER SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE JUDGMENT UNDER RULE 60(b)(5) AND (6)**

to be placed in the United States mail, with **first-class postage prepaid**, properly addressed as follows:

**Clerk of the Court**
U.S. District Court – Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101

**James P. Connor, Esq.**
Securities and Exchange Commission
Los Angeles Regional Office
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Email: connorja@sec.gov *(copy also sent by email as courtesy)*

**Department of Justice – Civil Division**
Federal Programs Branch
1100 L Street NW
Washington, DC 20005

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of May 2025

*James E Franklin*
James E. Franklin
Defendant, Pro Se
1212 H Street, #125
Ramona, CA 92065
jayvonfrank@gmail.com



**James E. Franklin**
1212 H Street, #125
Ramona, CA 92065
jayvonfrank@gmail.com

**May 5th, 2025**

**Clerk of the Court**
United States District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101

**Re: SEC v. James E. Franklin**
**Case No. 02cv0084 DMS (RBB)**
**Supplemental Memorandum in Support of Motion to Vacate Judgment**

Dear Clerk of the Court,

Please find enclosed for filing in the above-captioned matter:

- **One original and one copy** of Defendant James E. Franklin's **Master Supplemental Memorandum in Support of Motion to Vacate Judgment** pursuant to Rule 60(b)(5) and (6),
- **Certificate of Mailing/Service**, and
- A **prepaid, self-addressed envelope** for return of a conformed copy for my records.

I respectfully request that the enclosed supplemental memorandum be filed as part of the existing motion currently set for hearing on **June 6, 2025**.

Thank you for your time and attention to this matter.

Respectfully,

*James E. Franklin*
James E. Franklin
Pro Se Defendant



