FILED

JUN 11 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## For the Southern District of California

SECURITIES AND EXCHANGE )
COMMISSION )
Plaintiff, )
)
v. ) Case No. 02cv84 DMS (RBB)
)
JAMES E. FRANKLIN, )
   Defendant. )

## PETITIONER'S COMBINED REPLY AND MOTION FOR RELIEF FROM FINAL JUDGMENT UNDER RULE 60(b)(6) AND MOTION TO DISMISS

**TO THE HONORABLE COURT AND ALL PARTIES:**

Petitioner James E. Franklin respectfully moves this Court for relief from the final judgment entered on **December 15, 2005**, and the permanent penny stock bar imposed on **August 29, 2006**, pursuant to **Federal Rule of Civil Procedure 60(b)**. This filing also serves as a **reply to the SEC's opposition**, which fails to rebut the core factual and legal bases for relief. Most importantly, Petitioner submits that the permanent bar, now entering its **third decade**, functions as a punitive civil sanction so **grossly disproportionate to any proven misconduct** that it violates the **Eighth Amendment's prohibition on excessive fines**.

## I. THE LIFETIME PENNY STOCK BAR IS GROSSLY DISPROPORTIONATE AND VIOLATES THE EIGHTH AMENDMENT

1

**A. A Permanent Ban Without Profit, Fraud, or Victims Is Excessive Under Modern Constitutional Standards**

1. Petitioner has now served nearly **20 years** under a permanent penny stock bar—a sanction that effectively barred him from his livelihood, rendered him unemployable in his profession, and placed him on investor watchlists. Yet:

   - **No fraud was found**;

   - **No victims or investor losses were shown**;

   - **No profits were received by Petitioner**.

   - **The SEC admitted it could not locate any hidden assets or gain**.

   - **The SEC engaged in factual misrepresentation and concealed internal whistleblower objections.**

2. This financial reality is irreconcilable with the inference of a pump-and-dump scheme and negates any profit-based motive required for securities fraud.

3. The Supreme Court has made clear that **civil sanctions may violate the Eighth Amendment's Excessive Fines Clause** when they are punitive in purpose or grossly disproportionate to the conduct at issue.

4. In **Liu v. SEC**, 140 S. Ct. 1936 (2020), the Court reaffirmed that **SEC remedies must be tethered to restitution—not punishment**. The Court further clarified in **Austin v. United States**, 509 U.S. 602 (1993), and **United States v. Bajakajian**, 524 U.S. 321 (1998), that **even civil penalties must meet constitutional proportionality standards**.

5. In *United States v. Yancey*, 21 F.4th 1045 (8th Cir. 2021), the Eighth Circuit emphasized that the Excessive Fines Clause analysis requires courts to evaluate both the nature of the conduct and the relationship between the penalty and any harm caused. In that case, the

1

court noted that lifetime industry bans—particularly when imposed absent evidence of continuing risk to the public—may become punitive rather than remedial. *Yancey* thus supports the proposition that even where statutory violations are found, the imposition of a permanent bar must be carefully scrutinized for proportionality, **especially in cases lacking fraud, profit, or investor loss**. The SEC's continued enforcement of a lifetime bar in this matter—despite the absence of ongoing violations or public harm—mirrors the constitutional concerns raised in *Yancey*.

6. This case squarely fits the criteria for Eighth Amendment scrutiny:

- The penalty is indefinite and functions as a **civil death sentence**;
- The SEC has never identified an investor who suffered loss;
- Petitioner's documented reinvestments **exceed all alleged proceeds**;
- There has been **no reoffending or misconduct in 20 years**.
- The SEC engaged in **factual misrepresentations to a District Judge** and concealed internal whistleblower objections.

If any penalty is unmoored from harm and intent, this is it.

## II. SUMMARY OF GROUNDS FOR RELIEF AND EQUITABLE CONTEXT

1. This case was never a paradigmatic fraud case. It lacks the hallmarks of fraud—no losses, no unjust enrichment, and no scheme to deceive—as later clarified by Liu v. SEC, 140 S. Ct. 1936 (2020). As the Court itself observed:

*"I don't find this to be a classic fraud case. It doesn't strike me that Mr. Franklin was operating with a kind of malevolence you might see in some of the other cases."*
—Hr'g Tr. (Jan. 23, 2002) at 18:22–25.

2

2.  The equities here extend beyond the hardship to Petitioner—they implicate the judiciary's ongoing interest in ensuring that Rule 60(b)(6) remains a viable safeguard against inequity, especially when regulatory overreach is perpetuated without fraud or harm. Nonetheless, the Court deferred to the SEC's request for injunctive relief, noting:

*"Given the SEC's representations and the standard under the law, I believe an injunction is appropriate."*
—Id. at 19:8–10.

3.  Procedural Timeline:

    • 2002 – SEC files enforcement action.

    • 2004 – Final judgment entered.

    • 2006 – Penny stock bar imposed via administrative order.

    • 2007 – Appeal denied.

    • 2022 – Formal diagnosis of Petitioner's visual impairment.

    • 2024 – AI-based technology unlocks archive documents.

    • 2025 – This Rule 60(b)(6) motion is filed.

4.  New evidence—analyzed with AI in 2024 from previously unreadable scanned documents—shows that Petitioner and affiliated entities operated not as "pump-and-dump" promoters, but as a risk-bearing investment syndicate.

5.  Based on the SEC's own Exhibits 371 and 372, total net proceeds from all stock sales by IPO Consultants and Vector Keel amounted to **$3,327,290.74**., after deducting investment purchases and matched cross-transfers.

6. Petitioner's records—now compiled in a reconciled reinvestment table and supported by Exhibits 378, 572, 304, and 425—confirm **verified reinvestments totaling $3,288,150** into early-stage American ventures.

7. After deducting a $669,000 loss on Casmyn Minerals (Ex. 203), the syndicate not only failed to profit—it likely incurred a **net loss**.

## III. PROCEDURAL BACKGROUND

1. In **2005**, this Court entered a Final Judgment (ECF No. 45), permanently enjoining Petitioner and later, in **2006**, imposing a lifetime penny stock bar. While the Court acknowledged a lack of fraudulent intent, it nonetheless granted the SEC's requested relief, deferring to the agency's interpretations under the then-prevailing Chevron doctrine:

   "Given the SEC's representations and the standard under the law, I believe an injunction is appropriate." —Hr'g Tr. (Jan. 23, 2002) at 19:8–10.

2. In 2024, Petitioner—assisted by AI tools and counsel—conducted a full forensic analysis of over 26 boxes of evidence. The results warrant full Rule 60(b)(6) relief.

## IV. NEWLY DISCOVERED EVIDENCE AND REFRAMED FACTUAL RECORD

### A. IPO Consultants Functioned as a Private Investment Syndicate

1. The newly uncovered evidence—detailed in Exhibits 371, 372, 378 and 572—shows that Petitioner, through IPO Consultants and affiliated entities, functioned as a private investment syndicate that pooled capital—often through lawful offshore vehicles—to invest in early-stage American companies with high growth potential.

4

2. These investments were not promotional schemes but structured placements guided by financial strategy and third-party professional guidance. Petitioner and his affiliates committed substantial capital to a portfolio of ventures in emerging technologies, natural resource innovation, and digital finance.

## Verified Reinvestments by Petitioner and Affiliates

| Company / Venture | Description | Investment Entity | Verified Amount | Date(s) | Exhibit Ref |
|---|---|---|---|---|---|
| AXPL (Crest Loans) | Capital infusion to AXPL | Crest | $481,000 | 1996–97 | Ex. 304, 378 |
| MSP Technologies | AXPL subsidiary (John Jackson) | Vector Keel | $78,650 | 1997 | Ex. 378, 572 |
| Amalgamated Exploration (AXPL) | Additional loan | Vector Keel | $20,000 | 08/17/98 | Ex. 572 |
| NetUSA (NTSA) | UN internet infrastructure | Crest | $407,500 | 1996–97 | Ex. 378, 572 |
| Casmyn | Gold exploration | Vector Keel | (Loss of $669K) | 1996–97 | Ex. 203 |
| Georgian Bankcorp | Digital gold platform | Vector Keel | $250,000 | 1997 | Ex. 378, 572 |
| Red Rooster | Cannabis wellness venture | Vector Keel | $35,000 | 1997–98 | Ex. 378, 572 |
| Phoenix/ISE | Internet Stock Exchange & Phoenix BLP | Vector Keel | $125,000 | 1997 | Ex. 378, 425 |
| ICSL | Internet trading systems (Smith Barney) | Vector Keel | $250,000 | 08/14/97 | Ex. 572 |
| InvResearch | Research/data intelligence | Vector Keel | $60,000 | 1997–98 | Ex. 572 |
| Kimberly Franklin | Personal loan | Vector Keel | $70,000 | 12/16/97 | Ex. 572 |
| American Fire Retardant | Public safety innovation | Vector Keel | $30,000 | 11/03/97 | Ex. 572 |
| FPI, Inc. | Parent of American Fire Retardant | Vector Keel | $10,000 | 11/03/97 | Ex. 572 |
| Harold Clifford Pope | Legal services | Vector Keel | $22,000 | 11/27/97 | Ex. 572 |
| Oliver Moench | Legal services | Vector Keel | $10,000 | 10/15/97 | Ex. 572 |
| Seed & Berry | Intellectual property counsel | Vector Keel | $70,000 | 12/23/98 | Ex. 572 |
| Wenthur & Chachas | Securities & M&A counsel | Vector Keel | $20,000 | 02/05/98 | Ex. 572 |
| Oil & Gas Technology Fund | Advanced energy fund | Vector Keel | $280,000 | 09/24–12/23/98 | Ex. 572 |
| Bright Lane Fund HK | Hong Kong venture capital | Vector Keel | $200,000 | 03/31/98 | Ex. 572 |

| Company / Venture | Description | Investment Entity | Verified Amount | Date(s) | Exhibit Ref |
|---|---|---|---|---|---|
| IPO Consultants (internal) | Affiliate fund transfers | Vector Keel | $75,000 | 1997 | Ex. 572 |
| Margin Deposit | Transfer to Union Securities | Vector Keel | $125,000 | 01/05/98 | Ex. 572 |

**Total Verified Reinvestments: ≈ $3,288,150**

**B. Timeline Evidence Refutes SEC Theory of Coordination**

- Form M-11 Filing: Amalgamated Explorations Corporation (AXPL) filed its Form M-11 in March 15th, 1996 (Ex. 140) - 11 months before any promotion occurred.

- Wolanyk Disclosure Timing: Sam Wolanyk, founder of RedHotStocks, did not disclose his intention to launch a financial website until November 27, 1996 (Ex. 140), eleven months after the AXPL'S Form M-11 filing.

- Independent Oversight by Beroff: Arthur Beroff, an experienced investment banker, managed the AXPL and the NTSA structure and issuance without Petitioner's direction. See Dis Ex. 342/523 and 190-192. Beroff concurrently maintained separate consulting contracts with other issuers, including CMYN, (Dis Ex. 52) and LCAV, operating independently across a range of structuring assignments without any centralized control or scheme coordination.

- No Coordinated Planning Evidence: No emails, memos, instructions, or transactions show Petitioner participated in a coordinated distribution or fraud scheme.

6

### C. Technological Barriers and Visual Disability

3. Petitioner's full review was only possible in 2024 due to:

- AI-powered document parsing;
- His diagnosed visual disability in 2022;
- Prior lack of legal counsel.

## V. LEGAL CHANGE: THE END OF CHEVRON DEFERENCE

1. In *Loper Bright Enterprises v. Raimondo*, 602 U.S. ___ (2024), the U.S. Supreme Court formally overruled *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984). The Court held that federal courts must **independently interpret statutes** and **no longer defer** to agency interpretations of ambiguous laws.

2. In the present case, the SEC's enforcement theory rested not on direct statutory violations, but on its own interpretations of terms such as:

- "Control person" under Rule 144;
- "Penny stock promoter" under Exchange Act § 15(b)(6);
- Interpretive timing of beneficial ownership and holding period regulations.

3. Moreover, the record confirms trial counsel Greg Garrison emphasized at trial that the SEC's theory of control person liability was overextended. The jury ultimately found Petitioner liable in connection with only four issuers—AXPL, EZCL, NTSA, and WPUR—despite broader allegations by the SEC. This narrow verdict contradicts any notion that Petitioner exercised general control over RedHotStocks or its promotional campaigns. Mr. Garrison further argued that the SEC failed to show that Petitioner had day-to-day authority over RedHotStocks' editorial content or business strategy.

4. These interpretations were formerly insulated from challenge under *Chevron*, but they are

now **reviewable de novo**. Without *Chevron*, the legal predicate for the injunction and penny stock bar **no longer holds** when judged against the factual record.

## VI. EQUITABLE GROUNDS FOR RELIEF

1. Petitioner has **not reoffended in over 20 years**. During that time, he has dedicated himself to public-benefit innovation, including:

   - **WaterRx** – low-energy oxidizer and water purification system for disaster zones;
   - **Remote NMR aquifer mapping** for water resource security;
   - **White hydrogen exploration** using geophysical scanning;
   - **Modular disaster relief housing**.

2. Each innovation has been **fully disclosed**, and Petitioner has neither concealed his past nor sought to evade regulatory oversight. The **continued enforcement** of the injunction and bar serves no legitimate purpose—it operates only as a punitive restraint on a person who has demonstrated sustained, law-abiding conduct and constructive societal contributions.

In Japanese culture**,** *hansei* demands deep self-reflection, and *gaman* teaches perseverance. For two decades, Petitioner has persevered. It is time to let him move forward.

## VII. ADDRESSING THE SEC'S ARGUMENTS

1. The SEC argues no new evidence was produced and that this motion is a disguised appeal.

**But the record shows:**

- Evidence (Ex. 140, 304, 378, 572) was buried and inaccessible due to medical and technological barriers;
- No coordinated fraud scheme occurred;
- The Chevron doctrine—on which the original ruling relied—no longer binds the Court.

8

The equities, the law, and the facts now favor relief.

## VIII. THE COURT HAS DISCRETION TO GRANT RELIEF DESPITE THE PASSAGE OF TIME

1. Federal Rule of Civil Procedure 60(b)(6) imposes no strict time limit beyond the requirement of reasonableness. Courts in the Ninth Circuit recognize that "reasonable time" may span years where the **justification for relief arises later**—for example, through changes in law or newly discovered evidence.

2. Here:

   - *Chevron* remained good law until mid-2024;
   - Petitioner's evidence remained inaccessible due to **vision impairment** (Ex. 580) and the lack of modern AI tools;
   - No new misconduct or violations have occurred since the 2005 judgment.

3. These are precisely the "**extraordinary circumstances**" that Rule 60(b)(6) is meant to remedy.

## IX. FRAUD, MISREPRESENTATION, AND SEC ATTORNEY MISCONDUCT

1. Petitioner asserts a separate and independent basis for relief under Rule 60(b)(6) based on newly discovered and unrebutted evidence of intentional misconduct, misrepresentation, and fraud upon the court by SEC enforcement attorneys and related parties.

2. Whistleblower letters submitted in 2007 to the Commission by attorney Stephen J. Meyers, Esq., outlined in detail egregious misconduct by SEC staff and associated counsel. These letters were directed to the Commission and received no response. The allegations included:

- Disclosure of confidential investigatory material by Helaine Schwartz, former SEC Enforcement Attorney, to private litigants in violation of 18 U.S.C. § 1905;

- False representations by SEC Trial Attorney Glenn Harris at an ENE hearing regarding non-existent "law enforcement activity" against Petitioner, intended to coerce invocation of the Fifth Amendment;

- Improper use of SEC investigatory power by private counsel Deborah Klar to support unrelated civil litigation, constituting deceit under California Business & Professions Code § 6128.

3. These acts not only violated federal statutes but also multiple provisions of the California Rules of Professional Conduct, including Rules 1.6, 3.3, 4.1, and 8.4. Such conduct deprived Petitioner of due process, compromised the integrity of the judicial process, and justifies setting aside the judgment.

4. Under controlling law, including *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), courts have both the authority and the duty to vacate judgments procured by fraud or unconscionable government conduct.

5. Relief is thus appropriate under Rule 60(b)(6), and Petitioner respectfully asks that the Court consider this as an additional and independent basis for granting relief.

## X. POLITICAL BIAS AND SELECTIVE ENFORCEMENT

1. In addition to the unrebutted evidence of misconduct, public campaign finance records on OpenSecrets.org reflect that both SEC Enforcement Attorney Helaine Schwartz and private litigant attorney Deborah A. Klar were active political donors to Democratic causes. Petitioner, by contrast, was a known and outspoken Republican businessman at the time of the underlying events. These facts raise substantial questions regarding the impartiality and fairness of the enforcement process, particularly in light of the selective

application of investigatory tools, the misuse of confidential data, and the improper coordination between regulatory attorneys and private litigants.

2. Though political affiliation alone is not grounds for disqualification, where enforcement discretion is abused in a pattern that correlates with viewpoint or political identity, courts may appropriately inquire into whether the proceeding was tainted by viewpoint discrimination or selective enforcement, both of which constitute violations of the Equal Protection and Due Process Clauses. *See Wayte v. United States*, 470 U.S. 598 (1985); *United States v. Armstrong*, 517 U.S. 456 (1996).

## XI. CONCLUSION

1. This case was never criminal. No investor losses were shown. No scheme was coordinated. The original ruling was shaped by incomplete facts and legal deference that no longer applies.

As Gilbert Fowler once told Petitioner:

*"If you could only see 10 feet below the ground, just imagine the wealth beneath your feet."*

2. That was the vision that drove the investments now wrongly labeled as misconduct.

3. In 2005, the Court expressly noted:

**"I don't find this to be a classic fraud case. It doesn't strike me that Mr. Franklin was operating with a kind of malevolence you might see in some of the other cases."**
—Hr'g Tr. (Jan. 23, 2002), at 18:22–25.

4. The equities here extend beyond the hardship to Petitioner—they implicate the judiciary's ongoing interest in ensuring that Rule 60(b)(6) remains a viable safeguard against inequity, especially when regulatory overreach is perpetuated without fraud or

harm. Nonetheless, the Court deferred to the SEC's request for injunctive relief, noting:

*"Given the SEC's representations and the standard under the law, I believe an injunction is appropriate."*

—Id. at 19:8–10.

5. That standard—**Chevron deference**—has now been abandoned. And the factual record, when measured properly, shows **no coordinated scheme**, **no net gains**, and **substantial reinvestment losses**.

6. In Japanese philosophy, the virtue of **gaman** teaches resilience through hardship with dignity. Petitioner has lived under this injunction for over 20 years—without complaint, without further offense, and with meaningful contributions to public welfare.

**WHEREFORE**, Petitioner respectfully prays that this Court:

1. **Grant relief** under Rule 60(b)(6);

2. **Vacate or modify** the Final Judgment entered December 15, 2005 (ECF No. 45);

3. **Lift the permanent penny stock bar** imposed August 29, 2006; and

4. Grant such other and further relief as may be **just and proper**.

**Dated**: June 10, 2025

Respectfully submitted,

*James E Franklin*

James E. Franklin
Petitioner, Pro Se

1212 H Street, #125
Ramona, CA 92065
(720) 771-0140

12