FILED

JUN 1 1 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
For the Southern District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Plaintiff, | )<br>)<br>)<br>) |
| v. | )    Case No. 02cv84 DMS (RBB)<br>) |
| JAMES E. FRANKLIN,<br>Defendant. | )<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM FINAL JUDGMENT PURSUANT TO RULE 60(b)(6)**

## I. INTRODUCTION

1. Petitioner **James E. Franklin** respectfully submits this Memorandum of Points and Authorities in support of his Motion for Relief from Final Judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). The motion seeks vacatur or modification of the judgment entered in **2005**, which imposed permanent injunctive relief, and the **2006 penny stock bar**.

2. Extraordinary circumstances—including material new evidence, intervening legal authority, and the equities of the case—now warrant relief. The facts supporting the original judgment no longer reflect the record. The law has shifted, and the equities now call for closure, not continued restriction.

3. In Japanese culture, the concept of **"hansei"** teaches the value of deep self-reflection following mistakes—not to dwell in guilt, but to find strength and insight in imperfection.

1

With this motion, Petitioner reflects on the past, while seeking a just and truthful path forward.

## II. LEGAL STANDARD UNDER RULE 60(b)(6)

1. Federal Rule of Civil Procedure 60(b)(6) permits relief from a final judgment for "any other reason that justifies relief." This provision serves as a "grand reservoir of equitable power," and is available when extraordinary circumstances justify reopening a final judgment.

   See *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

2. The Ninth Circuit applies a multi-factor test that considers:

   1. Whether there are substantial changes in law or fact since the judgment;

   2. Whether the movant exercised diligence;

   3. Whether the equities weigh in favor of relief.

      See *Phelps v. Alameida*, 569 F.3d 1120, 1132–33 (9th Cir. 2009).

## III. EXTRAORDINARY CIRCUMSTANCES ARE PRESENT

### A. Change in Controlling Law: *Chevron* Is No Longer Good Law

1. In *Loper Bright Enterprises v. Raimondo*, 602 U.S. ___ (2024), the Supreme Court overturned the long-standing doctrine of **Chevron** deference. The Court held that federal courts may no longer defer to agency interpretations of ambiguous statutes, and must instead interpret the law de novo.

2. The SEC's enforcement theory against Petitioner relied heavily on interpretations of:

   • "Control person" under Rule 144;

   • "Promoter" under penny stock rules;

   • Holding period requirements for stock distribution.

3. Each of these issues was decided under an administrative interpretation standard that has now been overturned. The foundation for the judgment has been legally invalidated.

**B. Newly Discovered Evidence Refutes Key Factual Assumptions**

1. In 2024, Petitioner—assisted by AI tools—reviewed **26 bankers boxes of digitized records**. This evidence had been previously inaccessible due to Petitioner's **visual impairment** (diagnosed in 2022) and lack of legal representation.

2. Key revelations include:

   - **Independent structuring** of AXPL's Form M-11 in March 1996, nearly a year prior to any promotional activity;

   - A **$12,000 payment** to investment banker Arthur Beroff for purchase of NTSA shares—not coordination of any scheme (Ex. 61);

   - No evidence of Petitioner directing share distribution;

   - Investments totaling **over $2.13 million** into legitimate early-stage ventures;

   - Sam Wolanyk did not disclose plans to launch RedHotStocks until **November 27, 1996**—well after AXPL registration.

3. Additionally, full review of SEC **Exhibit 372** confirms total proceeds from all AXPL-related transactions were **$2,817,693**. **Exhibit 378** documents reinvestments exceeding **$2.59 million**, and **Exhibit 203** shows a trading loss of **$669,000** from Casmyn Minerals, absorbed by Petitioner's group—not passed to investors.

4. This means the record shows **no personal gain**—indeed, **net losses**—from the challenged transactions.

**C. Equities Strongly Favor Relief**

1. Petitioner has not reoffended in over **20 years**. During this time, he has:

3

- Invented **WaterRx**, a portable oxidizer for water purification in disaster zones;

- Led development of **Remote NMR sensing** for aquifer mapping;

- Designed **advanced drilling muds** for clean energy and mineral discovery;

- Supported **modular relief housing** systems for disaster survivors;

- Helped locate what may be **North America's largest hydrogen deposit**.

2. Despite these achievements and full transparency, the **2006 penny stock bar** continues to restrict Petitioner's participation in lawful investment activities.

**D**. **Issuer Success Confirms Market Utility and Rebuts Promotional Fraud Allegation**

1. In February 1997—immediately following the RedHotStocks profile—Amalgamated Explorations Ltd. (AXPL) successfully completed a private placement of **$1,000,000** by issuing **402,652 unregistered shares to 37 private investors** at **$2.50 per share**, pursuant to Rule 504 of Regulation D. See **Exhibit 304**. Many of these investors were **known to the syndicate** and made their investment based on the company's disclosed technology and business plan—not on speculative price movement.

2. Similarly, **Georgian Bancorp, Inc.** was able to raise **$1,000,000 in August 1997**, shortly after its RedHotStocks profile. While the company is now defunct, Petitioner has submitted a request to the Toronto Stock Exchange for a confirmation of that financing event. Both cases show the real-world capital formation that occurred—not artificial inflation—after RHS coverage.

3. These facts confirm that RHS functioned as an early-stage exposure platform—not a vehicle of manipulation—and that the companies themselves directly benefited from the visibility it provided.

4

# IV. THE COURT HAS DISCRETION TO GRANT RELIEF EVEN AFTER SIGNIFICANT TIME

1. Rule 60(b)(6) requires that motions be filed within a "reasonable time." The Ninth Circuit has found that even **long delays** are excusable when justified by recent changes in law or previously inaccessible facts.

   See *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017).

2. Petitioner's delay is attributable to:

   - The unavailability of AI tools until 2024;

   - The legal shield of *Chevron*, overturned only recently;

   - Vision disability that limited meaningful review until recently;

   - Lack of legal aid or resources.

# V. CONSTITUTIONAL LIMITS: THE EXCESSIVE FINES CLAUSE

1. Even assuming statutory and regulatory compliance, the Court must now confront a deeper constitutional infirmity: the imposition of a permanent professional ban, without proof of fraud, profit, or investor loss, violates the Excessive Fines Clause of the Eighth Amendment.

2. The Supreme Court has long held that civil penalties may be subject to Eighth Amendment scrutiny when they are punitive in nature. In *Austin v. United States*, 509 U.S. 602 (1993), the Court expressly applied the Excessive Fines Clause to civil sanctions. In *United States v. Bajakajian*, 524 U.S. 321 (1998), it invalidated a forfeiture that was "grossly disproportionate" to the offense.

3. More recently, *Liu v. SEC*, 140 S. Ct. 1936 (2020), further clarified that SEC civil

remedies must be remedial, not punitive. The Court emphasized that disgorgement must be tethered to actual gain or investor harm—not function as punishment. Lifetime bans, particularly those without findings of fraud or personal enrichment, must now be assessed through this constitutional lens.

4. Here, Petitioner James E. Franklin was not criminally charged. There were no investor losses, no demonstrated scienter, and no profit shown. Even the SEC conceded it could find no hidden assets or financial gain. Petitioner was found liable only as a "control person" for four issuers—AXPL, EZCL, NetUSA, and WPUR—not for widespread scheme conduct. Despite these limitations, a permanent penny stock bar has now deprived Petitioner of his profession, reputation, and livelihood for nearly two decades.

5. This sanction is no longer remedial. It is punitive. And as the cases below show, it is constitutionally excessive:

| Case | Key Holding / Relevance |
|---|---|
| *Liu v. SEC*, 140 S. Ct. 1936 (2020) | SEC relief must not be punitive; remedies must relate to actual gains or harm. |
| *Austin v. United States*, 509 U.S. 602 (1993) | Excessive Fines Clause applies to civil sanctions. |
| *U.S. v. Bajakajian*, 524 U.S. 321 (1998) | Civil penalty struck down as grossly disproportionate. |
| *SEC v. Yancey*, 21 F.4th 1045 (8th Cir. 2021) | Penalties must be proportionate; lifetime bars evaluated against harm and intent. |
| *SEC v. Tourre*, 58 F. Supp. 3d 447 (S.D.N.Y. 2014) | Courts must assess disparity between penalty and conduct. |
| *SEC v. Claton*, 2022 WL 614128 (D. Colo. Mar. 1, 2022) | Court denied lifetime bar where conduct was dated, non-fraudulent, and unlikely to recur. |
| *Hall v. Haws,* 861 F.3d 977 (9th Cir. 2017) | Rule 60(b)(6) / Reasonable Delay |

6. The Court should consider whether continuing enforcement of this judgment—unsupported by fraud findings or investor harm—remains justifiable under either equity or the Constitution.

## V. CONCLUSION

1. This is not a motion for leniency. It is a request for **legal and factual accuracy**, and for the equitable principles that support the rule of law.

2. The record has changed. The law has changed. Petitioner has changed.

3. Under the concept of **"gaman"** in Japanese culture—enduring hardship with patience and dignity—Petitioner has waited over two decades without misconduct. The continued enforcement of this injunction no longer serves the public good.

**WHEREFORE**, Petitioner respectfully requests that this Court:

1. Grant relief under Rule 60(b)(6);

2. Vacate or modify the Final Judgment (ECF No. 45);

3. Lift the permanent penny stock bar; and

4. Grant such other and further relief as may be just and proper.

Dated: June 10, 2025

Respectfully submitted,

*James E Franklin*

**James E. Franklin** Petitioner
Pro Se
1212 H Street, SPC #125
Ramona, CA 92065
jayvonfrank@gmail.com

7